In the United States District Court

For the Northern District of Alabama, Northern Division

| | |
|---|---|
| CHERELLE FLETCHER, individually and as Personal Representative of the Estate of Dana Sherrod Fletcher, deceased; and V.F., a minor, by and through her mother and next friend, Cherelle Fletcher,<br><br>Plaintiffs<br><br>v.<br><br>BEN CRUMP LAW, PLLC, a Florida Limited Liability Company; ROMANUCCI & BLANDIN, LLC, an Illinois Limited Liability Company<br><br>Defendants. | Case No._____<br><br>**Jury Demand** |

# COMPLAINT

**COME NOW** Plaintiffs, Cherelle Fletcher, individually and as Personal Representative of the Estate of Dana Sherrod Fletcher, deceased, and V.F., a minor, by and through her next friend Cherelle Fletcher, and hereby sue the Defendants and allege the following:

## PARTIES

1. Plaintiff Cherelle Fletcher is an adult citizen of the State of Alabama and resides in Madison County, Alabama. She also is the duly appointed Personal Representative of the Estate of Dana Sherrod Fletcher (the "Estate"), which estate was established in Madison County, Alabama.

2. Plaintiff V.F. is a minor resident of the State of Alabama and resides in Madison County, Alabama. This action is brought on her behalf by Cherelle Fletcher as her mother and next friend.

3. Defendant Ben Crump Law, PLLC is a Florida limited liability company with its principal place of business at 122 South Calhoun Street, Tallahassee, FL, 32301.  Defendant Crump Law's sole Member is Defendant Ben Crump, a Florida citizen.

4. Defendant Romanucci & Blandin, LLC, is an Illinois Limited Liability Company with its principal office located at 321 N. Clark St., Ste 900, Chicago, IL 60654.

## JURISDICTION AND VENUE

5. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between Plaintiff, a citizen of Alabama, and Defendants, who are citizens of states other than Alabama.

6. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) and (3), because a substantial part of the events giving rise to this lawsuit occurred in this district and because Defendants are subject to the Court's personal jurisdiction with respect to this lawsuit.

## FACTUAL ALLEGATIONS

7. On October 27, 2019, Plaintiffs were attacked and brutalized by five police officers employed by the City of Madison, Alabama.  Dana Sherrod Fletcher, who was Plaintiff Cherelle Fletcher's husband and Plaintiff V.F.'s father, was killed by officers who unlawfully seized him, unleashed a K-9 upon him, Tased him, and shot him multiple times during the course of a consensual encounter.

8. Plaintiff Cherelle Fletcher was familiar with Ben Crump's reputation as a nationally-known civil rights attorney who, among other things, routinely represents individuals in civil rights and wrongful death actions against law enforcement agencies in states around the country.

9. Mr. Crump also had a history of representing citizens of Alabama in actions against Alabama law enforcement officers and agencies for their alleged use of excessive or unnecessary deadly force.

10. Plaintiff contacted Defendant Crump Law, who agreed to represent Plaintiffs in connection with their family's devastating and fatal encounter with the City of Madison's police department. Defendant Crump Law informed Plaintiff Cherelle Fletcher that Defendant Romanucci would be his co-counsel in the representation. Plaintiff signed an engagement letter with both Defendant Crump Law and Defendant Romanucci.

11. Ben Crump came to Alabama to meet with Cherelle Fletcher and her family and to speak to local press regarding his representation of Plaintiffs in connection with the City of Madison's unlawful conduct toward Plaintiffs. Defendant Romanucci made press releases regarding its representation of Plaintiffs.

12. After killing Mr. Fletcher, the City of Madison took possession of his body and performed its own autopsy.

13. After the completion of its autopsy, the City of Madison began contacting Plaintiff Cherelle Fletcher to determine what she intended to do with Mr. Fletcher's remains. They did not disclose the results of the autopsy to Mrs. Fletcher.

14. To Plaintiffs' knowledge, the City of Madison's autopsy report was never disclosed to Defendants, either.

15. Mrs. Fletcher instructed the City of Madison to transfer Mr. Fletcher's body to Berryhill Funeral Home ("Berryhill").

16. Mr. Fletcher's wishes were to be cremated.

17. Before instructing Berryhill to cremate Mr. Fletcher's body, Mrs. Fletcher sought Defendants' legal advice. More particularly, Mrs. Fletcher called Mr. Crump, specifically informed him of her intent to cremate Mr. Fletcher's body, and directly asked Mr. Crump whether Defendants needed or intended to obtain an independent autopsy.

18. Mr. Crump told Mrs. Fletcher that he had no need for an independent autopsy and that she could cremate Mr. Fletcher's body right away.

19. Having no independent knowledge of how the case against the City of Madison would need to be investigated, proved, tried, or factually supported, Mrs. Fletcher relied solely on Defendants' legal advice and had Mr. Fletcher's body cremated without obtaining an independent autopsy.

20. One of Plaintiffs' primary objectives was to discover the identity of the five Madison police officers who had violated Plaintiffs' rights and killed Mr. Fletcher and to obtain their body camera footage and other records of the entire encounter.

21. The City of Madison refused to produce or make available the information to Plaintiffs or Defendants, either voluntarily or under a Freedom of Information Act request.

22. Defendants failed to initiate a lawsuit against the City of Madison to obtain this information.

23. On or about November 15, 2019, the Madison County District Attorney's office held a press conference about the findings of a supposed investigation into the incident involving the City of Madison's police officers and Mr. Fletcher.

24. Following the press conference, media outlets reported that Defendants Crump Law and Romanucci issued a public statement applauding local officials for releasing heavily edited, redacted, selectively narrated, and out-of-context still shots that purported to show, among other

things, Mr. Fletcher and an unidentified officer in various stages of a dramatic, Wild Wild West-style draw of weapons. Defendants neither informed Plaintiffs of their intent to issue a statement applauding officials, nor did Plaintiffs authorize such a statement.

25. Defendant Romanucci then suddenly terminated its representation of Plaintiffs. Defendant Romanucci's abrupt termination without good cause prejudiced Plaintiffs' legal interests. Defendant Romanucci also failed to locate other counsel to fulfill its contractual role in the representation.

26. At some point thereafter, Mrs. Fletcher spoke with Mr. Crump about Defendant Romanucci's sudden termination of its representation of the Plaintiffs. Mr. Crump assured Mrs. Fletcher that Defendant Romanucci had a different "philosophy" on civil rights cases from Crump himself. At no time did Mr. Crump say that he was terminating the Crump Law's representation of Plaintiffs.

27. Sometime later, Plaintiff received an email from "notifications@assuresign.com." The sender's email address looked like generic spam, and the email was not immediately opened.

28. Mrs. Fletcher found out from a third party that Crump Law no longer considered themselves to represent Plaintiffs.

29. She then discovered that the contents of the "notifications@assuresign.com" email contained a link to a document that purported to terminate the Crump Law's representation of Plaintiffs.

30. Mr. Crump never personally informed Plaintiffs that he no longer represented Plaintiffs' legal interests. Mr. Crump offered no explanation for terminating the representation, nor did he attempt to locate other counsel for Plaintiffs or advise them of any information that Defendants discovered while Crump Law represented Plaintiffs.

31. Further, Plaintiffs believe that the manner in which Defendants terminated their representation of Plaintiffs, including heaping public praise on officials who made only an incomplete, one-sided presentation of evidence that prejudiced Plaintiffs' legal interests, inhibited Plaintiffs' ability to find other civil rights lawyers who would represent them.

32. Nevertheless, Plaintiffs recently initiated a timely lawsuit in the Northern District of Alabama against the City of Madison and its agents who were responsible for the October 27 attack and for the practices and culture that lead to it (the "Wrongful Death Lawsuit").

33. Defendants' incompetence and negligence in the provision of legal advice and services have prejudiced Plaintiffs in their ability to establish and preserve important factual issues that could be critical to, if not dispositive of, one or more of Plaintiffs' legal interests, claims, and outcomes in the Wrongful Death Lawsuit.

## CAUSES OF ACTION

### Count 1—Legal Malpractice

34. Plaintiffs reallege and incorporate by reference paragraphs 1-32 as if set forth herein in full.

35. Plaintiffs and Defendants had an attorney-client relationship.

36. Defendants had a duty to provide competent legal advice about the need to obtain an independent autopsy to preserve Plaintiffs' legal interests with respect to matters within the scope of Defendants' representation. Defendants' failure to provide competent advice regarding Mr. Fletcher's cremation resulted in the permanent destruction of evidence that may prove critical to or dispositive of one or more of Plaintiffs' claims in, and/or outcome of, the Wrongful Death Lawsuit.

37. Defendants had a duty to protect Plaintiffs' legal interests by discovering the identities of the five police officers who initiated the fatal attack on their family and obtaining their body camera footage. Defendants failed to initiate legal action to obtain this crucial information.

38. Defendants prejudiced Plaintiffs' legal interests by abruptly terminating legal representation without sufficient reason, without providing Plaintiffs an opportunity to secure other legal representation before Defendants stopped working their case, and without advising Plaintiffs of critical steps to take in the near future to protect their legal interests.

39. As a proximate result of Defendants' malfeasance, Plaintiffs have experienced severe emotional distress, permanent loss of evidence that is critical to the legal matters in which Defendants previously represented Plaintiffs, and other damages that have yet to be determined.

WHEREFORE, Plaintiffs are entitled to compensatory and punitive damages, attorney's fees, interest, costs, and such other relief as the Court or a jury may deem appropriate.

Respectfully submitted,

/s/ Shayla Fletcher
Shayla Fletcher, Esq.
Counsel for Plaintiff Cherelle Fletcher, Individually and as Personal Representative of the Estate of Dana Sherrod Fletcher, and V.F., a minor, by and through her mother and next friend Cherelle Fletcher

3900 Montclair Rd #131401
Birmingham, AL 35213
(256) 662-6946
sfletcherlaw@gmail.com